Reese, J.,
delivered the opinion of the court.
We are called upon to give a construction to the will of James Williams, which is annexed to the bill of complainant. The will itself manifests, that the testator was possessed of a considerable real and personal estate, consisting of lands, negroes, stock, &c. The question arises upon the tenth item m the instrument. The items from the first to the sixth inclusive, give to that number of testator’s relations specific legacies of negroes, with an additional devise, in one instance, of a tract of land. The seventh, eighth and ninth items give money legacies, amounting in the aggregate to thirteen hundred dollars. The tenth and last item of the will is as follows: “I give and bequeath to James Williams, son of Sam, all the land that T possess, not otherwise disposed of by this will. I also give and bequeath to him Big Sam and his wife, and all their children; also Pat and his wife and their two youngest children; also I give him all my stock of all kinds, household and kitchen furniture, with all my notes and ac *25 count's, with my stills, whiskey and everything else not wise disposed of, by his paying Peggy, (meaning Peggy Williams,) the four hundred dollars that I have given her in this will, in twelve months, and by paying Jeremiah H. Shelburne the five hundred dollars that I have left him in this will, in two years; also, by paying William Robinson the four hundred dollars that I have given him in this will in three years; also, all my just debts he is to pay;” and he then appointed him and the complainant his executors.
At the date of the will the testator possessed a negro slave Judy, and her child, not specifically bequeathed, and before his death, there were other slaves born, and some purchased, as was likewise purchased a small piece of land. The latter it •is on all hands admitted does not pass by the devises of the will. The only question therefore’is, whether the tenth item of the will which specifically enumerates and gives to (he defendant so large a portion of the real and personal estate of the testator, constitutes him also residuary legatee? It is a principle sanctioned alike by reason and by authority, that when one engages in an act so solemn and important as the execution and publication of a last will and testament, he is not t-o ■be presumed as intending, -with reference to any portion of his property, to die intestate. Again, it is well settled, that in the construction of last wills and testaments, the scope and import of the entire instrument are to be considered for the purpose of discovering the intention of the testator, and that such intention, when discovered, is of paramount and controlling influence. This will, then, consisting of ten items, ■disposes in the first nine of a considerable share of testator’s estate to nine persons, who seem to have been all of them, and in no very unequal degree, the secondary objects of his bounty. In the tenth and last item of his will, he for the first time mentions the defendant, who seems to be the chief object of his bounty. To him he gives all his land, not otherwise disposed of by the will, the negroes named, all his stock of all kinds, his household and kitchen furniture, all his notes and accounts, his stills, his whiskey, and every thing else not otherwise disposed of, on the condition of his pay- *26 *n§ 'n ^ie tirae specified; all the pecuniary legacies of the will all the lust debts of the testator.
- # . . That the defendant is by the above item constituted residuary legatee is manifest. This is the last item of the will. The defendant is unquestionably, by the first words of the item, constituted residuary devisee of the real estate. Words of enlargement and accumulation are frequently used, as if to show the extent of testator’s bounty, as all the land, “all their children,” “all my stock of all kinds, all my notes and accounts,” “every thing else not otherwise disposed of.” &c.
That the last words, “not otherwise disposed of,” mean, not otherwise disposed of by the will, is shown by the same words in the same item, applied to land expressly in that sense;'again, that all the pecuniary legacies and all'tbe debts are charged upon property described in this item, seems to be founded upon its residuary, rather than upon its specific character. And lastly, the words “every thing else not otherwise disposed of,” are clear and appropriate, for the purpose of creating a residuum.
But it has been strenuously and elaborately argued, that a rule for the exposition of wills, applicable to this item, has been adopted and enforced by Courts of Chancery, called somewhat quaintly the rule of ejusdem generis, and 'that that rule will have the efiect to limit and restrict the general words, “every thing else not otherwise disposed of” to things of tlig hke nature and description with the antece? dent particulars, whiskey, stills, accounts, notes, furniture, stock, &c. If it be intended to assert that Courts of Chancery have adopted and enforced a rule of artificial and arbitrary construction, or a rule of legal intention, controlling and countervailing, when necessary, the actual intention of the testator, to be gathered from the context, and scope, and frame of the will, then we have no hesitation in asserting, that a careful examination of all the cases relied on for its establishment, will demonstrate that no such rule in fact exists.
The great rule in the construction of wills, to which this one of ejusdem generis and all others, except those founded upon public policy, are not only subordinate, but ancillary, is, that the i Hention of the'testator, to be ascertained from the pari *27 ticular words used, from the context and from the general scope and purpose of the instrument, is to prevail and have effect. In an enumeration of particulars, general and com-1 . , 1 . . , _ prehensive terms are sometimes used, m the construction ot which, reason and good sense require that if you would not violate the intention of the writer, their meaning must be restricted to things of a like nature and description, with the particulars among which they are found. This is a rule of intention, and it readily yields where the circumstances show that a reliance upon it would defeat, rather than effectuate the intention. A reference to some cases in which the tule has been spoken of will establish the correctness of this remark. The case of Trafford vs. Berriage, 1 Eq. Cases Ab. 201, pl. 14, was, “that A. bequeated to his niece all his goods, chattels, household stuff, furniture, and other things which were then, or should be, in his house at the time of his death.” Some time after A. died", leaving about <£265 in ready money in the house, and it was decided, that this ready money did not pass, for by the words “other things,” should be intended things of the like nature and species before mentioned. .
There was no question here, whether the niece were a general residuary legatee; her interest was to be limited by the locality, goods, chattels, stuff, furniture, things in the house. Money is not likely to be described by its locale, but by its amount; and besides, the amount, with reference to the value of other things in the house, may have been such as to make it impossible to believe that if intended to have been given it would not have been given bo nomine.
The case in the Precedents in Chancery, 8, was this; “B. bequeathed to his wife £1200 in money and all the goods and chattels, plate, jewels, and household stuffs, and stock upon the ground in and belonging to his house in N., in which house there was £400 in money. The question was, whether this last money passed to the wife under the above words, and it was decided that it should not; for £400 was a considerable sum of money, of which the testator could not be supposed to be ignorant, and that had he intended that the money should have passed, he would not have connected *28 ^Ie gener£>l words, “all bis goods and chattels,” but at first would have given to his wife £1600 instead of £1200.
The case of Woolcomb vs. Woolcomb, 3 Peere Williams, 111, is, that “one devised to his wife all his household goods and other goods, plate and stock, within doors and1 without, and bequeated the residue of his personal estate to-J. S. The question was, whether testator’s ready money, cash and bonds would pass to the wife by these words? It was contended, that the words, “other goods,” were sufficient to pass the whole personal estate. To which it was answered, that if the words, “other goods,” were taken in so large a sense, it would make void the bequest of the residuum, which would not be allowed. That it seemed reasonable the words, “other goods,” should be understood to signify things of the like nature with household goods, to the end that the whole will might have its effect, and of this opinion was the chancellor,” &c. In the case of Cavendish vs. Cavendish, 1 Brown’s, C. C. 437, “The testatrix bequeathed her cabinet of curiosities, consisting of coins* medals, gems,” &c. The question was, whether any thing would pass that was not an article in the «cabinet of curiosities? And it was decided that the general words must be restricted to such things as properly belonged to a cab’net of curiosities. But it were needless to cite all the cases referred to in argument; they will all be found to have turned very much upon their own particular circumstances, and they will all manifest the solicitude of the courts to attain, by the adoption or rejection of the supposed rule in question, or other rules, as circumstances might require, the purpose and intention of the testator. In a very late case, Arnold vs. Arnold, 2 Myln and Keene, 365; 8 Con. Eng. Cha. Rep. 36, a bequest of “wines and property in England,” was held to pass the testator’s property in England of every description, including money in the funds and at his bankers, debts and arrears of a pension due him, and was not confined to property ejusdem generis with wines, and in that case the court used the following language, “that the mere enumeration of particular articles followed by a general bequest does not necessarily restrict the general bequest, is obvious,, *29 because a testator often throws m such specific words, and . * then winds up the general catalogue with some comprehensive expression for the very purpose of preventing the bequest from being so restricted.”
This remark, we think, peculiarly applicable to the case before us. Upon the whole, we deem this a very clear case.
Let the decree be reversed, the bill be dismissed, and the executors pay the cost out of the estate.
Decree reversed.